```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
U.S. UNDERWRITERS INSURANCE            :
COMPANY,                               :
                                       :       **MEMORANDUM AND ORDER**
                Plaintiff,             :
                                       :       07-CV-4933 (DLI)(ALC)
         -against-                     :
                                       :
LUCIANO CALANDRA, CONCETTA             :
CALANDRA, DANIELA CALANDRA,            :
PALMA DELUCA, DIANE ROGER and          :
JAMES ROGER,                           :
                                       :
                Defendants.            :
----------------------------------------------------------- x
```
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff U.S. Underwriters Insurance Company brought this action seeking a declaration that it has no duty to defend or indemnify defendants Luciano Calandra, Concetta Calandra, and Daniela Calandra (the "Calandra Defendants") in a personal injury suit pending before the Supreme Court of the State of New York, Queens County (the "Queens County action").[1] Plaintiff moves for summary judgment, arguing that it properly disclaimed coverage for the injury because the Calandra Defendants failed to provide timely notice of the accident as was required by the governing insurance policy. The Calandra Defendants oppose summary judgment on the grounds that there are genuine issues of material fact in dispute as to this notice-of-occurrence question. For the reasons set forth below, the court grants plaintiff's

---

[1] *See generally Diane Roger and James Roger v. Luciano Calandra and Palma Deluca*, Index No. 20352/2007 (Queens Ct. Sup. Ct.). Diane and James Roger are not involved in the instant motion, although they are named defendants. Palma DeLuca, the owner of real property adjacent to the land owned by the Calandra Defendants, is likewise a named defendant who is uninvolved in the instant motion. Although Luciano is the only member of the Calandra family named in the Queens County action, Concetta (his sister-in-law) and Daniela (his niece), who co-own the relevant real property, are both co-defendants in the instant action.

1

summary judgment motion, and declares that plaintiff has no duty to defend or indemnify the defendants in the Queens County action.

**I.     Background**

On the morning of February 21, 2007, Diane Roger was walking along Grand Avenue in Queens, New York. (Roger Dep. at 10, 15–16.) The sidewalk on which she was walking abutted a commercial property, 7120 Grand Avenue, which was owned by the Calandra Defendants and occupied by the Calandras' tenant, Alliance Glass, an auto glass-repair business. (Velez Dep. at 4.) The deposition testimony differs as to the condition of the sidewalk that morning, with Diane Roger stating that there was only a poorly-cleared path through the snow, and Raymond Velez, the owner of Alliance Glass, stating that he had cleared it completely the night before, pursuant to his standing agreement with the Calandras to do so. (*Id.* at 11–16.) While walking on this sidewalk, Diane Roger slipped and fell, injuring herself to the extent that she was unable to stand unaided. (Roger Dep. at 54–59.) She was taken by ambulance to St. John's Hospital, where a doctor determined that she had fractured her pelvis. (*Id.* at 66–68.)

After learning of the accident, Linda Daquaro,[2] Roger's daughter, went to Alliance Glass and spoke with Velez. (Daquaro Dep. at 14.) She informed Velez of the accident, including the fact that an ambulance had taken her mother to the hospital. (Velez Dep. at 19–21.) Daquaro asked Velez for the telephone number of the property owner, which he gave to her; according to Daquaro, this transaction occurred the morning of the accident, whereas Velez stated that he gave her the Calandras' information when she returned the following day. (*Compare id.* at 23–24, *with* Daquaro Dep. at 22.) Velez stated in his deposition that Daquaro wanted to contact the landlord because "[s]he wanted to contact his insurance." (Velez Dep. at 26.)

---

[2]  Daquaro is neither a party to the underlying Queens County action nor to the instant action.

Following Daquaro's visit, Velez called Luciano Calandra to "let him know that some woman fell" on the sidewalk that morning. (Velez Dep. at 35; *see also* Calandra Dep. at 29–30.) Luciano testified that he in turn called his sister-in-law, Concetta ("Connie") Calandra, and told her to inform their insurance broker about the incident. (Calandra Dep. at 50–55.) Luciano further stated that "if somebody fell, both [he and Concetta] should know to go in and tell the insurance company to cover, make sure the insurance company would know about it." (*Id.* at 51.) According to Luciano, Concetta said that she would notify the insurance broker. (*Id.* at 53.) Concetta also spoke directly to Velez, telling him to give Daquaro her phone number if Daquaro returned to Alliance Glass. (Velez Dep. at 41–42.) Velez sent her copies of pictures he had taken of the sidewalk. (*Id.* at 37.) Luciano stated his belief that Concetta later forwarded these pictures to the insurance company, although he did not know when this might have occurred. (Calandra Dep. at 61.)

The record is unclear as to whether the Calandra Defendants ever spoke directly to Linda Daquaro or Diane Roger about the incident. Daquaro stated that she spoke to Luciano Calandra by phone from the hospital the morning of the accident, while Luciano denied that such a conversation took place. (*Compare* Daquaro Dep. at 40, *with* Calandra Dep. at 31–32.) Daquaro admitted that she never offered Velez or the Calandras any contact information for herself or her mother. (Daquaro Dep. at 40, 42.) However, she stated that she knew Velez from the neighborhood, and Velez confirmed that he had had past dealings with Daquaro. (Daquaro Dep. at 15–16; Velez Dep. at 21–22.)

On August 6, 2007, counsel for Diane and James Roger notified Luciano Calandra of a possible lawsuit regarding Diane's injury. (Aff. of Leslie Romasco in Supp. of Mot. for Summary Judgment ("Aff."), Ex. 2 at 3.) On August 13, 2007, Concetta Calandra sent a letter to

the Calandras' insurance broker, Eric Weiner, advising him of this potential litigation. (*Id.*, Ex. 2 at 3.) According to plaintiff, this was the first notice they had ever received of the accident. (*Id.* at 4.) On September 5, 2007, plaintiff informed the Calandra Defendants that it would investigate the Rogers' claim, while reserving "its rights to disclaim coverage based on failure to provide timely notice of the claim." (*Id.*, Ex. 4 at 3.) Following its investigation, plaintiff disclaimed coverage in a letter to the Calandra Defendants dated September 24, 2007. (*Id.*, Ex. 6.) This disclaimer was based on a provision of the insurance policy issued by plaintiff, in effect at all relevant times, which required the Calandra Defendants to notify plaintiff "as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Aff. at 2; *see generally id.*, Ex. 1.) According to the policy:

> To the extent possible, notice should include:
> (1) How, when, and where the "occurrence" or offense took place;
> (2) The name and addresses of any injured persons and witnesses; and
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

(Aff. at 2.) The policy further defines an "occurrence" as "an accident." (*Id.*, Ex. 1 at 38.)

On November 28, 2007, plaintiff filed the instant action seeking to disclaim any obligation to defend or indemnify the Calandra Defendants in the Queens County action. On February 25, 2009, plaintiff moved for summary judgment. The Calandra Defendants oppose the motion on the grounds that there are genuine issues of material fact. Specifically, they argue that they did not possess the necessary identifying information for Diane Roger until Roger's attorney contacted them in August 2007, and, therefore, their subsequent letter to Eric Weiner constituted notice-of-occurrence as soon as was practicable. (*See* Defs.' Mem. in Opp'n to Summ. J. Mot. ("Defs.' Mem.") at 1–2.) Furthermore, the Calandra Defendants argue that they had a reasonable belief that they were not liable for Diane Roger's injury, which in turn served to

4

excuse their untimely notice to plaintiff. (*See id.* at 2.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the non-moving party, but "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With respect to the issue at bar, whether or not notice of an occurrence was given to an insurer within a reasonable time "may be determined as a question of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." *State of N.Y. v. Blank*, 27 F.3d 783, 795 (2d Cir. 1994).

In order to defeat a summary judgment motion, the non-moving party carries only "a limited burden of production," but "must demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (internal quotation marks and citations omitted). Those specific facts must be more than "conclusory statements, conjecture, or speculation." *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003). The court must weigh the evidence presented by the non-moving party before allowing that evidence to be used to defeat a motion for summary judgment, and evidence that is "blatantly contradicted by the record" should not be accepted for this purpose. *See Scott v.*

*Harris*, 550 U.S. 372, 380 (2007).

B.  **Notice-of-Occurrence**

Notice-of-occurrence provisions in insurance policies "enable insurers to make a timely investigation of relevant events and exercise early control over a claim," which in turn helps to "eliminate the risk of similar occurrences in the future." *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir. 1987); *see also Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 240 (1st Dep't 2002) (such provisions allow for "timely investigation and the opportunity . . . to dispose of the claim in its early stages [which] might be irretrievably lost in the case of delayed notice . . . ."). "Under New York law, compliance with a notice-of-occurrence provision . . . is a condition precedent to an insurer's liability under the policy." *Commercial Union Ins. Co.*, 822 F.2d at 271 (citations omitted).

When, as in the case at bar, a notice-of-occurrence provision requires notification to the insurer "as soon as practicable," the insured must do so "within a reasonable time under all of the circumstances." *Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (1972) (citations omitted); *see also Blank*, 27 F.3d at 796 ("In the absence of mitigating factors, courts have found, as a matter of law, even short periods of delay to be unreasonable.") (citation, alterations and internal quotation marks omitted). If the insured fails to provide timely notice, the Second Circuit has held that this "may be excused . . . by proof that the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995). Therefore the court first must determine the reasonableness of the period between the accident and notification. If it finds this period was unreasonable, then the court must determine whether the defendants have a valid excuse for the delay.

6

1.  **Reasonableness of the Period Between Occurrence and Notification**

It is undisputed that there was a nearly six-month period between Diane Roger's accident and notification of this accident to plaintiff. The Calandra Defendants argue that this period was reasonable under the circumstances because they did not possess Diane Rogers' indentifying information until they received correspondence from her attorney in August 2007.

An insured party need not provide notice "on the basis of mere speculation, rumor, or remote contingencies." *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 275–76 (2d Cir. 1992). However, the insured has an affirmative duty to investigate incidents, and a court may consider whether facts known to the insured would have alerted a reasonable person that their policy might have been implicated. *See Utica Mut. Ins. Co.*, 748 F.2d at 122; *see also Kaesong Corp. v. United Nat'l Specialty Ins. Co.*, 2008 WL 1902684, at *3 (E.D.N.Y. Apr. 25, 2008) ("The fact that [an individual] suffered injuries . . . that required immediate medical attention should have triggered a response from [the insured] to at a minimum investigate the incident and contact its insurer."); *Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 241 (1st Dep't 2002) (knowledge of person being taken by ambulance to hospital "is a significant factor in determining the reasonableness of any delay in giving notice."). Furthermore, a provision that mandates notice to the insurer as long as an occurrence "may" implicate the policy, such as the one at bar, requires only a "reasonable *possibility* of such happening, based on an objective assessment of the information available." *Christiania Gen. Ins. Corp.*, 979 F.2d at 276 (emphasis added) (citation and internal quotation marks omitted).

Here, both Luciano and Concetta Calandra knew within a day of its occurrence that a slip-and-fall had occurred in the immediate vicinity of Alliance Glass. (*See* Calandra Dep. at 29–32.) As this knowledge was based neither on speculation nor rumor, but rather on the

7

Calandras' direct communication with their tenant, it should have triggered further investigation into whether the insurance policy might be implicated. *See Christiania Gen. Ins. Corp.*, 979 F.2d at 275–76; *see also Utica Mut. Ins. Co.*, 748 F.2d at 122. The fact that the Calandra Defendants did not possess identifying information for Roger does not, as a matter of law, excuse their failure to conduct any investigation whatsoever. *See SSBSS Realty Corp. v. Pub. Serv. Mut. Ins. Co.*, 253 A.D.2d 583, 585 (1st Dep't 1998) (involving slip-and-fall accident in which unidentified woman was taken from scene in ambulance, and holding that insured party "had both the ability and the responsibility to investigate the outcome of the accident."). Moreover, the contention that notice could not be provided without Roger's identifying information is undercut by the plain language of the policy, which only required the Calandra Defendants to include such information "to the extent possible." (Aff. at 2.) It is also worth noting that both Roger and Daquaro lived near Alliance Glass, and Velez knew Daquaro from past business dealings, meaning that the Calandras might have located Roger with minimal effort. (*See* Roger Dep. at 8–9, 29; Daquaro Dep. at 15–16; Velez Dep. at 21, 22.)

In sum, an objective assessment of the information readily available to the Calandras within a day or two of the accident—that a woman had been taken to the hospital as a result of an injury sustained on their property, and that the woman's daughter wanted to contact their insurance company—should have indicated that there was at least a reasonable possibility of their policy being implicated. *See Christiania Gen. Ins. Corp.*, 979 F.2d at 276; *see also Utica Mut. Ins. Co.*, 748 F.2d at 122; *Kaesong Corp.*, 2008 WL 1902684, at \*3; *Paramount Ins. Co.*, 293 A.D.2d at 241. This, in turn, should have triggered notice to plaintiff long before August 2007. That notice, in fact, was not given for nearly six months after the accident is unreasonable as a matter of law. *See Blank*, 27 F.3d at 796.

## 2. Defendants' Excuse for Delay in Notification

The Second Circuit has recognized two valid excuses for failure to provide timely notification: that the insured either (1) lacked knowledge of the occurrence; or (2) had a reasonable belief of nonliability. *See Sparacino*, 50 F.3d at 143. The Calandra Defendants argue that they believed any liability for Roger's accident would rest with their tenant, Velez. The Calandras cite both their verbal agreement with Velez to keep the sidewalk clear, and several New York City administrative codes, as the collective basis for this belief.

Courts have consistently held that a belief in a third party's superseding liability is unreasonable as a matter of law, and thus cannot excuse failure to provide timely notice. *See Eastern Baby Stores, Inc. v. Central Mut. Ins. Co.*, 2008 WL 2276527, at *2 (S.D.N.Y. June 2, 2008); *see also Phila. Indem. Ins. Co. v. Genesee Valley Improvement Corp.*, 41 A.D.3d 44, 47 (4th Dep't 2007) ("assumption that other parties would bear the ultimate responsibility for . . . injuries is insufficient and unreasonable as a matter of law to excuse [the insured's] nine-month delay in providing notice."); *Heydt Contracting Corp. v. Am. Home Assurance Co.*, 146 A.D.2d 497, 499 (1st Dep't 1989) ("plaintiff's assumption that other parties would bear ultimate responsibility for its property loss is insufficient as a matter of law to excuse the more than four-month delay in giving notice."). In light of such precedent, the court finds that the Calandra Defendants' belief that Velez would be solely liable for any action resulting from negligent snow removal cannot, as a matter of law, excuse their delay in notification. Furthermore, such a belief is belied by Luciano Calandra's own statement that that he and Concetta "should know to . . . tell the insurance company to cover" them in the event of someone falling on their tenants' property. (*See* Calandra Dep. at 50–51.)

In sum, due to the unreasonable length of time between the accident and notification, and

the Calandra Defendants' lack of a valid excuse for this delay, the court holds that there was no compliance with the notice-of-occurrence provision in plaintiff's insurance policy. *See Blank*, 27 F.3d at 795.

## III. Conclusion

For the reasons set forth above, the plaintiff's motion for summary judgment is granted. The court declares that plaintiff has no duty to defend or indemnify the Calandra plaintiffs with respect to the underlying Queens County litigation.


SO ORDERED


DATED:    Brooklyn, New York
               March 19, 2010

                                                                     /s/
                                                               Dora L. Irizarry
                                          United States District Judge